**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**SUSAN KAY WEST**                                                                         **PLAINTIFF**

**VERSUS**                                           **CIVIL ACTION NO. 1:10cv142-HSO-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's Motion [11-1] to Reverse. Having considered the Motion [11-1], the record of the proceedings below, along with the record as a whole and the relevant law, this Court recommends that Plaintiff's Motion [11-1] to Reverse should be denied.

## ADMINISTRATIVE PROCEEDINGS

On December 6, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"). (Transcript of the Administrative Record, hereinafter "Tr.," 14.) Plaintiff claimed that she had been disabled since May 27, 2005. *Id.* Plaintiff's claim was initially denied on January 30, 2007 and then again upon reconsideration on March 20, 2007. *Id.* Plaintiff then requested a hearing on April 2, 2007, which was held on June 23, 2008. (Tr. 10, 23-51.) On July 31, 2008, the Administrative Law Judge ("ALJ") determined that the Plaintiff was not disabled under section 216(i) and 223(d) of the Social Security Act. (Tr. 22.) Review of the ALJ's decision was denied by the Appeals Council on January 28, 2010. (Tr. 1.) On March 25, 2010 Plaintiff filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act. (*See* Compl. [1-1].)

## FACTS

Plaintiff was 57 years old at the time the ALJ denied her application for benefits. (Tr.

100.) Plaintiff has an associates degree in electronics and was previously employed as a photocopier technician. (Tr. 127, 285, 440.) Plaintiff is alleging disability since May 27, 2005. (Tr. 14.)

On August, 30, 2004, Plaintiff injured her back lifting a tool box out the back of her truck. (Tr. 219, 221.) On September 1, 2004, Plaintiff was examined by Allen Young, M.D. (Tr. 221-223.) Plaintiff complained of pain in the bilateral lumbar region of the spine which radiated to the right leg. (Tr. 221.) Dr. Young restricted Plaintiff's work activity to not lifting over ten pounds, not bending or stooping, and not performing anything but sedentary work. (Tr. 224.) Dr. Young examined Plaintiff again September 14, 2004 and opined that Plaintiff still had pain but that it had gotten "quite a bit better." (Tr. 225.) Dr. Young concluded that Plaintiff had a sprained lumbar region and that she should be restricted to light duty at work. (Tr. 226.) Plaintiff saw Dr. Young again on September 28 and October 12, 2004. (Tr. 228-233.) After physical therapy failed to improve Plaintiff's condition, Dr. Young recommended Plaintiff quit working. (Tr. 234.)

On November 9, 2004, after two weeks of not working and physical therapy, Plaintiff claimed she was not improving. (Tr. 239.) Dr. Young recommended that Plaintiff see a chiropractor but advised against surgery after examining an MRI taken of Plaintiff's back. (Tr. 242.) On November 28, 2004, Plaintiff reported to Dr. Young that her pain had "decreased some, but not improved." (Tr. 247.) Plaintiff maintained throughout all her visits to Dr. Young that driving had increased her pain. (Tr. 221-283.) On December 29, 2004, Dr. Young noted that since Plaintiff had not been working, her condition had slowly improved in the sense that her pain was intermittent, not constant. (Tr. 251.) On the December 29,2004 visit, Dr. Young determined that Plaintiff had improved enough to return to light duty at work. (Tr. 253.) On January 31, 2005, Dr. Young noted that Plaintiff felt going to the chiropractor "is really helping."

(Tr. 259.) Plaintiff also reported having less pain in general, no pain in her legs, and a better range of motion. *Id.*

On February 25, 2005, Dr. Young observed that Plaintiff had some disc dessication and bulging annulus at L4-5. (Tr. 264.) Dr. Young noted that this condition ordinarily would not be one in which surgery is necessary. *Id.* However, when considering the failed conservative treatments, Dr. Young thought it reasonable to get a second opinion regarding the necessity of surgery. *Id.*

On September 7, 2005, Plaintiff was admitted to St. Mary's Medical Center after she tripped and fell on stairs. (Tr. 339.) Plaintiff complained of aggravating her lower back injury and injuring her foot. *Id.*

Beginning on September 15, 2005, Plaintiff began attending therapy sessions at United Health Professionals Behavioral Medicine and Wellness. (Tr. 436.) Throughout the duration of her therapy sessions, Plaintiff repeated some common problems. (Tr. 407-435.) Plaintiff often discussed how it deeply troubled her that her son was addicted to drugs and at one point was in jail because of his drug problem. (Tr. 414.) Plaintiff also discussed problems she had with her husband. (Tr. 412.) Other factors found to contribute to Plaintiff's depression was the fact that she was $30,000 in debt, she was in physical pain because of her back, and she had trouble sleeping. (Tr. 407-435.)

On March 20, 2006, Plaintiff was examined at Huntington Spine Rehab & Pain Center by Lois Wexler, D.O. (Tr. 380.) Plaintiff was given a corticosteroid injection but it "did not really help her symptoms." (Tr. 380-381.) Plaintiff was then given a series of epidural injections over the next several months. (Tr. 382-392.)

On May 24, 2006, Plaintiff underwent a mental status evaluation at the hand of Penny

Perdue, M.A. (Tr. 284-286.) Plaintiff reported that she had daily depression, "anxiety lasting all day," "feelings of worthlessness, and poor concentration." (Tr. 284.) On June 1, 2006, Timothy Saar, Ph.D. examined Plaintiff and found that she was not severely limited by her reported depression and anxiety. (Tr. 299.)

On June 30, 2006, Fulvio Franyutti, M.D. performed a physical residual functional capacity ("RFC") assessment on Plaintiff. (Tr. 318-325.) Dr. Franyutti determined that Plaintiff could occasionally lift fifty pounds, frequently lift twenty five pounds, stand or walk for six hours in an eight hour work day, and sit for six hours during an eight hour work day. (Tr. 319.) On October 10, 2006, Plaintiff had an MRI taken and reviewed by Gregory Holmes, M.D. (Tr. 399.) Dr. Holmes noted a mild disc bulge at L4-5. *Id.*

In a second RFC assessment on January 11, 2007, Plaintiff's primary diagnosis was lumbar disc disease and was given the same limitations as the previous RFC assessment. (Tr. 356.) RFC examiner Jill Lilly, requested that Plaintiff be reviewed by a psychologist. (Tr. 364.) G. David Allen, Ph. D. examined Plaintiff on January 25, 2007 and found that while she did have a major depressive episode, her impairments were not severe. (Tr. 365, 368.)

On March 6, 2007, Debra Stulz, M.D. conducted a medical assessment of ability to do work-related activities (mental). (Tr. 441-443.) Dr. Stulz observed that Plaintiff had poor ability to deal with the public, interact with supervisors, deal with work stress, function independently, and maintain concentration. (Tr. 441.) Dr. Stulz also opined that Plaintiff had "severe concentration problems." (Tr. 442.) Dr. Stulz noted that Plaintiff was easily upset and overwhelmed and did not demonstrate reliability. *Id.*

On March 20, 2007, Plaintiff underwent a third physical RFC assessment. (Tr. 452-459.) Uma Reddy, M.D. concluded that Plaintiff could lift twenty pounds occasionally, ten pounds

frequently, could stand for six hours in an eight hour work day, and sit for six hours in an eight hour work day. (Tr. 453.)

On June 7, 2007, Plaintiff saw Philip Fisher, D.O. at Huntington Spine Rehab and Pain Center and received chemoneurolytic blocks. (Tr. 518.) Plaintiff reported that the injections "helped greatly to relieve her pain." (Tr. 517.)

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

The evaluation process for determining whether an individual is disabled is

outlined in 20 CFR § 404.1520(a). This process involves a five-step sequential analysis. First, it must be determined if the individual is engaged in substantial gainful activity (SGA). 20 CFR § 404.1520(b). If an individual engages in SGA, that person is not disabled no matter the severity of his or her physical and mental impairments. However, if the individual does not engage in SGA, the evaluation proceeds to step two, at which point a determination is made as to whether the individual has a medically determinable impairment or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An individual's impairment will be deemed "severe" if that impairment significantly limits that individual's ability to perform basic work activities. A determination that the individual's impairment is less than severe will end the evaluation, but a finding that his or her impairment is severe calls for further evaluation under the third step. In the third step, the ALJ must determine if the claimant's impairment or combination of impairments meets the criteria stated in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525, 404.1526. If the claimant's impairments meet the requirements listed, that individual shall be deemed disabled. If the claimant is determined to not meet those criteria, the ALJ must continue the evaluation under step four. Prior to step four, the ALJ must determine the claimant's residual functional capacity. 20 CFR § 404.1520(e). This is determined by the individual's ability to do sustained physical and mental work despite any restrictions his impairments may cause. 20 CFR § 404.1520(e). At step four, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 CFR § 404.1520(f). Past relevant work includes work previously performed by the claimant, or work generally performed in the national economy, in the last 15 years or 15 years prior to when disability must be established. 20 CFR § 404.1560(b). A failure to demonstrate the required residual functional capacity will cause an evaluation under the final step of the analysis. At the fifth step, the ALJ must determine whether

the claimant is capable of performing any work considering his or her residual functional capacity, age, education, and work experience. 20 CFR § 404.1520(g). If the claimant can perform any work considered, he or she is determined not to be disabled, while a finding that the claimant is incapable of performing the considered work will result in the conclusion that the individual is disabled. 20 CFR § 404.1520(g).

At the first step of the sequential evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 27, 2005. (Tr. 16.) At step two, the ALJ determined that Plaintiff was severely impaired with obesity; stable, mild disc bulge at L4-5 and degenerative joint disease. *Id.* The ALJ then found at step three that Plaintiff did not have an impairment or combination of impairments that met the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR §§ 404.1520(d), 404.1525, 404.1526. (Tr. 19.) The ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). *Id.* The ALJ also noted that Plaintiff can lift up to twenty pounds and can lift ten pounds frequently. *Id.* The Plaintiff was also deemed capable to climb, stoop, kneel, and crouch. *Id.* However, the ALJ determined that the Plaintiff could not handle concentrated exposure to extreme cold, extreme heat, vibrations, fumes, odors, and hazards. *Id.* At step four, the ALJ determined that Plaintiff would be able to perform past relevant work as a photocopier technician. (Tr. 21.) Since the Plaintiff is capable of performing past relevant work, she is not disabled. (Tr. 22.)

In Plaintiff's Motion [11-1] for a Reversal, she contends that she is unable to work "due to chronic back pain, physical and mental limitations." (Pl.'s Mo. [11-1] 4.)  The Court finds as to this issue Plaintiff's contention whether the Commissioner's finding that Plaintiff remained able to perform past relevant work was supported by substantial evidence and legally correct.

When considering a claimant's symptoms, the ALJ must first determine if there is a medically determinable physical or mental impairment. (SSR 94-4p.) The ALJ must then consider the intensity and persistence of the symptoms before determining the limiting effects of the impairments. *Id.* When considering symptoms that are not substantiated by medical evidence, the ALJ must make a determination on the credibility of the claimant's statement about those symptoms. (SSR 96-7p.)

### A. Physical Impairments

Plaintiff claimed many health conditions made her disabled but only three of those conditions were considered severe. (Tr. 16.) Plaintiff claimed that her osteopenia, hypothyroidism, high blood pressure, high cholesterol, psoriasis, pityriasis rubra pilaris, restless leg syndrome, and the fact that she is pre-diabetic made it impossible for her to work. (Tr. 16-17, 142.) The ALJ determined that none of these conditions impaired Plaintiff's ability to do basic work activities. (Tr. 16-17.)

At the hearing in front of the ALJ, Plaintiff noted that she had osteopenia and takes medication for this condition. (Tr. 16.) However, Plaintiff did not explain how that condition limited her ability to perform work activities and the record shows no explanation of limitation caused by this disease. Therefore, the ALJ justifiably concluded that this condition was not severe.

Plaintiff also claimed that hypothyroidism, high blood pressure, and high cholesterol rendered her disabled. (Tr. 16-17.) However, the ALJ noted that the record shows that if these conditions are controlled by medication, Plaintiff would not suffer impairment from them. (Tr. 16-17.) Plaintiff also testified that she does not feel any symptoms from the hypothyroidism. (Tr. 44.)  Also, there is nothing in the treatment notes from the record to indicate Plaintiff suffered

severe impairment from these conditions. (Tr. 393-405, 489-505.)

Plaintiff also testified that she has psoriasis and pityriasis. (Tr. 43, 45.) At the hearing, Plaintiff stated that "It's not as bad as it was because I'm on a medication." (Tr. 43.) Plaintiff also testified that the psoriasis embarrasses her and itches a lot. *Id.* Plaintiff claimed that pityriasis caused her to get bumps that itch and burn. (Tr. 45.) However, there is nothing in the record to indicate that Plaintiff is restricted in any work activity due to her psoriasis and pityriasis.

Plaintiff was diagnosed with restless leg syndrome in February 2006. (Tr. 17, 354.) However, there is no mention in the record of how this condition negatively affects Plaintiff's ability to perform work activities. Plaintiff also testified that she is "pre-diabetic." (Tr. 44.) There is no evidence of treatment for this condition in the record and the only effect Plaintiff claims is that her blood sugar sometimes runs high, not affecting her ability to work. *Id.*

Plaintiff testified that back pain from her initial injury in August 2004 prevents her from getting and maintaining a job. (Tr. 31-37.) Plaintiff testified that she can only stand five to ten minutes before the pain in her back and leg force her to reposition herself. (Tr. 34.) Plaintiff also claimed she can only sit in a chair for thirty minutes at a time before she must reposition herself because of the pain. (Tr. 35.) However, in all three of her RFC assessments, the examiners determined that Plaintiff could sit for six hours in an eight hour work day and stand for six hours in an eight hour workday. (Tr. 319, 356, 453.) Also, none of her treating physicians opined that her physical limitations would prevent her from working.

When the ALJ asked Plaintiff to rate her pain on a scale of one to ten, Plaintiff testified that most of the time her pain is only "a one or two," and when the pain is at its worst her pain is a seven or eight. (Tr. 36.) The ALJ determined that Plaintiff's testimony regarding her physical impairments and limitations to be exaggerated due to the lack of medical evidence to substantiate

her claims. (Tr. 21.) There is no evidence in the record to suggest any significant range of motions restrictions, except for a mild restriction in the right hip, or anything less than normal muscle strength. (Tr. 312.)

### B. Mental Impairments

20 C.F.R. § 404.1520a sets out a special psychiatric review technique for the ALJ to use in evaluating the severity of the claimant's mental impairments. Under this regulation, the ALJ must first evaluate symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1).  If such an impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment in four categories deemed essential to work: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* at § 404.1520a(c)(3).  After rating the functional limitation resulting from the mental impairment, the ALJ determines whether the impairment is "severe" or "not severe" given the degree of functional loss found in the four enumerated categories. *Id.* at § 404.1520a(d)(1).  Mental impairments rated as "none" or "mild" in the first three categories and "none" in the fourth category are generally considered "not severe." *Id.*  If the impairment is considered "severe," the ALJ must determine whether the impairment meets or is equivalent in severity to a listed mental disorder. *Id.* at § 404.1520a(d)(2).  If the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ must assess the claimant's residual functional capacity. *Id.* at § 404.1520a(d)(3).

The regulations also require the ALJ to document application of the psychiatric review technique in his written decision.  Specifically:

> [T]he written decision must incorporate the pertinent findings and

> conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include specific finding as to the degree of limitation in each of the functional areas described in [20 C.F.R. § 404.1520a(c)].

20 C.F.R. § 404.1520a(e)(2).  Where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the psychiatric review technique and make the required findings constitutes legal error and requires remand. *Satterwhite v. Barnhard*, 44 Fed. Appx. 652, 2002 WL 1396957 at *2 (5th Cir. 2002); *see also Selassie v. Barnhard*, 203 Fed. Appx. 174, 176, 2006 WL 2990105 at *1 (9th Cir. 2006) (failure to follow the requirements of section 404.1520a requires reversal where the claimant has a "colorable claim of a mental impairment"); *Moore v. Barnhard*, 405 F.3d 1208, 1214 (11th Cir. 2005) (same); *but see Robbers v. Comm'r of Social Security Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (rejecting *per se* rule requiring remand in any case where ALJ failed to follow section 404.1520a).  In the Fifth Circuit, however, an ALJ's failure to complete the psychiatric review technique is a procedural error that does not require remand, provided the error has not affected a party's substantial rights. *McGehee v. Charter*, 83 F.3d 418, 1996 WL 197435, *3 (5th Cir. 1996) (unpubl.) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)).

The ALJ considered Plaintiff's medically determinable mental impairments of depression, anxiety, and chronic pain syndrome and determined that they, singly and together, do not cause more than minimal limitation on Plaintiff's ability to perform work related activities. (Tr. 18.) The ALJ also examined specific findings and relevant history in considering the Plaintiff's degree of limitation in the four areas deemed essential for work.

In the first functional area of daily living, the ALJ determined that Plaintiff had only mild

limitation. (Tr. 18.) The ALJ came to this conclusion by pointing to the fact that Plaintiff is able to take care of her own personal needs; including driving, bathing, household chores, and other daily activities. *Id.* This determination is substantiated by the record. The ALJ then found that Plaintiff had no limitation in social functioning. *Id.* At the hearing, Plaintiff testified that while she does get nervous around large groups, she has no problem speaking with strangers. (Tr. 39-40.) In the area of concentration, persistence, or pace, the ALJ determined that Plaintiff had mild limitation. (Tr. 18.) Even though Plaintiff claimed she had problems concentrating, a psychological examination revealed that her concentration and persistence were within normal ranges and her pace was only mildly slow. (Tr. 285.) The ALJ also determined that Plaintiff had experienced no decompensation in the fourth functional area. (Tr. 18.) The Court finds that the ALJ correctly considered all the functional areas and determined that Plaintiff's mental impairments were not severe.

      The Court further finds the ALJ did not give the opinion of Dr. Debra Stultz much weight because her findings were not supported by the evidence included in the record. (Tr. 21.) Also, the ALJ concluded that Plaintiff's depression and anxiety were situational. *Id.* Plaintiff's daily living and social functioning activities are primarily affected by her physical complaints. *Id.* In addition, the Court finds the ALJ gave significant weight to the State agency medical opinion because it was more consistent with the record as a whole. *Id.* Upon review, the Court finds, it is clear that the record does support the medical opinion of the State agency which is in conflict with some of Dr. Stultz's findings.

      Moreover, the Court finds the ALJ properly posed the hypothetical question about available positions to the vocational expert at the hearing (as it included all disabilities and limitations the ALJ deemed the Plaintiff to have). *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.

1994).  The vocational expert indicated that Plaintiff would be able to perform her past work. (Tr. 48.) After the ALJ added the limitation of not being able to "climb ladders, ropes, or scaffolds; occasional interaction with the public; and a job that can be learned in one or two steps," the vocational expert indicated that the individual would not be able to perform past work but could perform other medium, light, and sedentary work." *Id.* The vocational expert then proceeded to list a number of jobs with a significant amount of available positions both regionally and nationally. (Tr. 48-49.) After the vocational expert considered the necessity of a sit/stand option every 30 minutes, she stated that an individual with this restriction would not be able to perform medium or light work but could still perform sedentary work. (Tr. 49.)

## **RECOMMENDATION**

The Court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed. Thus, the Court recommends that Plaintiff's Motion [11-1] to Remand or Reverse be denied.

In accordance with the Rules of this Court, any party within fourteen days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and

legal conclusions accepted by the District Court.  *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the 22nd day of July, 2011.

*s/ John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE